Number 21, 1009, Hyundai Electric v. United States. Mr. Kindler. Thank you, Your Honor. May it please the Court. Your Honors, this is a case about the Commerce Department simplistically refusing to verify information. Its entire decision and legal defense rests on the misplaced and conclusory determination that Hyundai's costs were unverifiable, and thus that Total Adverse Facts Available, or AFA, was justified. It made this determination despite failing to point to any inaccuracy with Hyundai's costs that would make them unverifiable. Counselor, this is Judge Reno. Now, it seems to me just based on the record that Commerce gave Hyundai three different opportunities to provide the information it was seeking, and that it was explicitly seeking information that was detailed enough for it to be able to perform its dump and margin calculations. And this was a project-specific and then cost-specific information it was seeking, and the information that DO provided was not project-specific or cost-specific. It was more general or aggregate information. So what's your response to that? You did get three different opportunities. I mean, if Commerce was satisfied with the information you gave them, or they should have been, in response to the initial questionnaire response, why would they have given you three more supplemental questionnaires seeking and reminding you that they needed more detailed information? Thank you, Judge Reno, for that question. I have a few responses to that. First, with respect to the government's notion that there were three opportunities, and that refers to the initial questionnaire and then two subsequent supplemental questionnaires, we would respectfully contest that there were three opportunities. What these were were three successive requests. As Your Honor notes, each one requesting more information than the previous request. And in response to each of those requests, Hyundai provided the information that the Commerce Department requested. It provided the itemizations that it requested. It provided the part-specific and cost-specific tracing information that the Department requested. And I'll be happy to get into that in additional detail further in my argument. But the kind of top-line issue here is that the Commerce Department... Did you actually provide the detailed cost information that Commerce was seeking? Yes, Your Honor, we did. And we would point the court to Attachment 2, SD1, in response to the second supplemental questionnaire. The description of that is that Appendix 27,356, in which Hyundai described the six categories of costs accounting for the total adjustment, and then the worksheets and supporting materials starting at 27,369, which is the details of adjustment worksheet, and then 27,370, the details of shift of material worksheet, the last lines of which to the prior worksheet all reconciled and provided the project-specific itemizations. Your Honor can refer to the specific project numbers in those worksheets that show the itemizations and the cost tracing. Okay, I see that. But in those very same supplemental questionnaires, they ask you to provide in detail how you're able to identify and quantify the costs that are misrecorded in your standard accounting procedures. It also asks the total breakdown of direct material costs by material type, and not a project-specific breakdown of direct material costs. Well, you know, no one is saying, I certainly don't believe that you didn't give any information or maybe even attempt to respond, but you didn't provide the information that Commerce received it. Well, Your Honor, I would point you then, if you continue looking at Adjustment 2 SD1, you can see at Appendix 27,370, again, there are specific part descriptions there with amounts, with material codes, and the shifted from and shifted to project. And it's our view that this is, indeed, responsive to Commerce's request for the itemization, for the details. To the degree that the Commerce Department raised additional issues and its final determination, or that the government now- Did you ever provide a complete cost breakdown for each reported home market and U.S. sale? I believe, yes, Your Honor, that we did. If you look at that, the sales were by project-specific costs, breakdowns by silicon steel and other materials. The six categories on the Details of Adjustment Worksheet that you see at the top there, the silicon steel cost, the other material costs, material costs incurred after the year of COGS reconciliation, recalculated scrap, recalculated fixed overhead, and the total adjustment. And you provided that information based on each distinct project? Yes, Your Honor. You'll see that on the left-hand side. I looked at that, and it seems to me that the information you provided was just aggregate cost differences. Your Honor- You did not trace costs as it shifted from one project to another. And you almost acknowledged that in your responses. Well, if you look at the left-hand side of that table we're talking about, at Appendix 27,369, you'll see the transformer project number and then SEQ. That refers to each individual home market sale. And then on the subsequent worksheet, you've got the shifted from project and the shifted to project. So we would assert that we did provide for each project, for each sale, what it was shifted from and what it was shifted to, and then you've got the description of the individual parts there, as well as the cost categories. And this is, again, at 27,369 to 27,370. The main issue, however, we would assert, Your Honor, and all of your honors, is that the department took this information and then claimed that it was unverifiable. And that's the real issue here because both the issue of verifiability  which the Commerce Department disregarded and consequently violated. So turning first to the question of verifiability, here Commerce did schedule a verification, yet canceled it at the last minute when announcing its preliminary results, claiming that Hyundai's costs were not verifiable. It then reiterated that in its final results. But that finding is untenable because a finding of unverifiability is subject to the substantial evidence standard. And the Court of International Trade has held that, quote, refusal to subject certain factual information to a verification procedure is not the equivalent of a valid finding that such information cannot be verified under the statute. Rather, Commerce must make an effort and reasonably show that the information cannot, in fact, be verified. And just to be clear here, verifiable doesn't mean... ...and provide the information it requested. By holding a verification, Your Honor, and that's exactly what Commerce didn't do here. I mean, why would they do that? If they're looking at the questionnaire responses and they do not contain the information that Commerce requested, why would they go and verify that? Well, that's where this case is so vexing, particularly when you compare it to the prior original investigation and second administrative review, in which Commerce verified the exact same cost-recording methods, both with respect to the cost reconciliation and with respect to Hyundai's part-specific cost tracing. There is no difference. Even though there may be difference in the actual costs and actual facts, which Hyundai does not contest, there is no difference in the cost-reporting methodology used by Hyundai and the documents that Hyundai provided on the record in those two prior... Wouldn't you agree that verification is basically a reconciliation process? In part, yes, Your Honor. It's a reconciliation and a spot-checking process. How can you reconcile data if you don't have the data that you requested or that you require in order to move on and undertake a dumping analysis? Because Hyundai did submit the data in question. It submitted it here, it submitted it in those prior reviews, and the documents that it provided gave a roadmap in terms of spot-checking and reconciling, as Your Honor notes, that specific data. Here, the difference is that Commerce had more information than it had in any of those other prior reviews. It then disregarded it. It claimed that Hyundai did not submit what it asked for, when, in fact, it had. And then it simplistically cast it all aside as being unverifiable, something that is subject to the substantial evidence standard and that Commerce was, in fact... To your argument, the thing that bothers me the most about what occurred here is Commerce's viewpoint of manipulation, that Hyundai was involved in some sort of a scheme here. But Commerce does say that they basically... that Hyundai was keeping two sets of books, one based for profit and the other one was your actual cost. Is that correct? Your Honor, yes, it is correct. What Hyundai engages in is a policy of shifting costs to and from projects to maintain profitability across projects. That has been the same in every administrative review and in the original investigation. The Department of Commerce verified that very system twice. There is no material difference between the system that Commerce previously verified and the system that Commerce claims is at issue here, and which, as your Honor notes, they used the word manipulated over 20 times in the original decision. It's simply this casting aside, this deeming of unverifiability, which it has not demonstrated in fact. And, indeed, it was the same Department of Commerce staff that verified Hyundai's cost information in the original investigation and in the POR2 verification, yet suddenly in the fifth administrative review here in POR5 said that it was unverifiable. There is nothing to account for that change aside from the Commerce Department's simple declaration, a conclusory declaration, that Hyundai's costs were unverifiable. Thus, when we consider the significant evidence on record, the verification procedures that the Commerce Department was able to conduct in the original investigation and in POR2 it is clear that the Commerce Department's declaration of unverifiability cannot stand. Likewise, this is the case with the Commerce Department's application of total AFA. Now, the cost reporting issues underlying Commerce's application of AFA are complex, and we have limited time to address them all. I'm going to focus on a few key issues and otherwise refer the Court to pages 34 to 51 of our initial brief and 11 to 30 of our reply brief. First, with respect to the cost reconciliation, the Commerce Department claims that Hyundai did not break out the merchandise not under consideration, or non-MUC, into separate categories nor provide details of these categories. Both of these assertions are false. The record demonstrates that Hyundai broke out the costs from these non-MUC into nine distinct categories and provided the requisite details. To the degree the Department wanted other details or different details, the onus was on it to make that clear in its deficiency notice. It did not do so. With respect to Hyundai's part-specific cost tracing, the Department continued to insist and the Government continues to insist before the Court that Hyundai did not itemize and only provided sample information. We discussed that earlier this morning, Your Honors, and we would point the Court to our briefs in which we discussed how the sample the Government claims is much more than that. And then finally, with respect to an adverse inference, this Court has made clear that commerce may only apply an adverse inference in the circumstances in which it is reasonable for commerce to expect more forthcoming responses. Here, given the extensive and detailed explanations, worksheets, source materials, and two prior successful verifications covering identical cost-reporting methodologies, it would be unreasonable to expect anything more forthcoming. Accordingly, the Court should reverse and remand commerce's decision, and I yield the rest of my time to rebuttal. Thank you, Your Honors. Okay, any more questions for counsel at the moment? All right, thank you. We will hear from the Government. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. This Court should affirm commerce's determination to apply total adverse facts available to Hyundai because, as Judge Reynaud's questions indicated, Hyundai failed to respond to the questionnaire that commerce asked. I think as an initial matter, we should talk just briefly about the manipulation of the books and records. As we noted on our brief, it is Hyundai's right to keep its books and records in the way it desires to. However, if it's going to engage in this process with commerce, it needs to be able to accurately point to the cost of production. It is not contested here that the actual books, the reported books and records of Hyundai, cannot be relied upon by commerce. Well, let me ask you, let me interrupt you with this failed to respond. We see that the responses were extensive, and I gather it's not disputed that they responded in at least as much detail and apparently more detail than in the prior reviews. And so where is the failure to response? Certainly, Your Honor. And commerce discusses this in the IDM specific, several pages or several paragraphs dedicated to it, essentially saying that commerce is not required to rely on information just because it's accepted out of prior verification. Specifically to the court's question about failure to respond, I will just read the court some questions that were asked of Hyundai and the responses they provided. The initial questionnaire asked for per unit cost of production information for each condom. And of course, in large power transformers like we're dealing with here, each control number would be an individual project because these are complex and tailored projects. Provide worksheets reconciling the total cost per unit. Identify and quantify differences between reporting methodology and describe the level of product specificity. The responses that commerce got it determined were not sufficient, and so in the first supplemental questionnaire, and this question appears on page 16748, it again asks for each reported home market and U.S. sale, provide the total cost reported in the SAP, which is the manipulated version of the book, the total cost reported to the actual department, and then an itemization of materials and related costs making up the difference. In response to that, Hyundai provided a yearly total direct cost breakdown but not actually broken out by project number, by actual specific condom number. They provided a monthly total direct cost number broken out by project number but not actually broken out by material. And then they provided project specific costs for March 2016, which as noted in our brief, was not actually a period within the period of review. It was a month outside of the period of review where they did provide actual specific costs, direct material costs by project number. I'll note that direct materials are only one of six categories of costs that go into making a large power transformer, but there was some response there. Commerce made it very clear in its second questionnaire that it did not consider that to be responsive. Its second supplemental questionnaire specifically said you did not provide a response to question nine, which is the question I was just quoting from, for each reported home market and U.S. sale, and it again requested that same information. And that question is specifically on appendix page 25049. And that is where we got the responses about this. Councilor, a couple of questions here. How does all this translate into manipulation? And the statements that Commerce has that it just seems that Hyundai was involved in seeking to hide things from Commerce, where, as you know, their accounting system may be set up, or it is set up in a certain way. They may have provided you answers to your questions based on their accounting system. I don't know if the statute requires that a respondent provide the information exactly the way that Commerce wants. It seems to me that the requirement is that they provide, that they make an honest effort to provide the information that they do have and as much as possible in the type of setting that Commerce seeks. Yes, Your Honor, that's absolutely true. But Commerce also, as the court held in Yvonne Steel in 2007, the statute does not condone inadequate record keeping. With regard to manipulation, Commerce did not make an indetermination that there was any intent here or there was a desire of Hyundai to not fully report its costs. As the court knows, there is no requirement of a finding of intent in order to make a determination of adverse facts available. But Commerce did not make a determination that the manipulation was improper in any way. And again, as we said in our brief, if Hyundai likes to keep their books in this way and likes to keep a more consistent profit across projects, that is completely their right. It's really hard to read Commerce's determination and not walk away that Commerce is accusing Hyundai of manipulating its data of intent. They acted with an intent to deceive you and I kind of don't buy that. I don't necessarily believe that that was the determination made by Commerce. And again, Hyundai never argued that they did not, that the actual reported cost of production or their actual audited books and records were something that Commerce could rely on. And that's typically what, for example, a verification, Commerce would receive the audited books and records and all the information that it asked and then Commerce plans its verification out. It determines which systems it's going to check. It will do kind of a spot check where, for example here, if they had given project-specific costs for 200 projects, let's say Commerce might select two or three of those out That's what verification is for. You go down and you verify the information they gave you against the questions you're asking. And that's where the answer comes out whether there's been some sort of manipulation or not of data. And without Commerce going down to verify, it seems to me that they verified without going down to verify. The problem is, Your Honor, they did not have the information that they would have needed to verify because those audited books and records that a typical company would typically indicate actually reflect their cost of production. Hyundai did not do that here. Again, there was not a finding that that was improper on Hyundai's part. It was just that Commerce could not rely on their audited books and records because Hyundai conceded that they internally shift costs among projects in order to keep this more consistent profit level. And so as Commerce noted, I'm here in the verification or in the IDM on page 28307 of the IDM. It says, as outlined in detail, Hyundai's failure to provide crucial and fundamental data requested by Commerce was the basis of our decision not to verify. Hyundai did not provide a complete explanation of how its actual cost could be derived from its distorted books and records, and therefore it could not verify that information. And that was the fundamental problem here, that Commerce never actually received an idea, a project-specific reconciliation that explained for, hypothetically, Project 123 reported cost of $1,000. Again, this is just a hypothetical example. That cost, where those costs were shifted to and from, what that cost, if that cost actually represents the actual cost of production of that LPT, if there were costs shifted to or from that project, from another project, and where those costs all came from. That was the information that Commerce was asking from Hyundai, and that was the project-specific reconciliation that it never received. And with regard to other categories of costs, for example, the... When you have a situation where Commerce has a series of rolling questionnaires and asking for maybe the same information, but in a different way, a different format, and these are coming one after another, then it butts up to verification. I... It seems to me that why don't you verify and try to reconcile the information that you do have, that they have provided, before you say that verification failed? Here, you're taking the position that we don't even have to verify, as opposed to, we went down there, these books did not reconcile, the information was not at the degree of specificity that we sought, and therefore, they failed verification, and therefore, we're going to apply other facts. Yes, Your Honor. Commerce made the determination, and we believe this determination is supported by substantial evidence, that because of the wholesale failure of Hyundai to respond fully to the questions that Commerce had asked it, it did not have the information that it required on the record in order to conduct a verification. And with regard to this idea that Commerce had previously verified the information, as an initial matter, I think that's mildly misleading. Commerce did conduct verification in the third and fourth administrative review, but Hyundai was assigned total adverse effects available in both of those reviews, and so while Commerce did not make the affirmative determination to cancel that verification, it was not a finding that these books were perfectly fine and they could rely on everything, and those determinations were based on reporting of home marketing, U.S. sales, and various costs of production. And as Commerce also explained in the IDM and the cost memo, these are complicated projects. We are in a fifth administrative review here, so it's the sixth time Commerce is looking at it, and it came to understand during this round of responses in the narrative that it previously believed that the cost manipulation was segregated to certain parts of the books, and therefore it would be much... Certain parts of the books, as reported, could be verified or could be relied upon. Commerce came to understand in this firm... Excuse me, in this administrative review that that was not accurate, that actually the entirety of the books' cost could be shifted from any project, and there was no portion of the individual books that Commerce felt that it could rely on, which is why it... That's a pretty major decision. Why didn't you make that decision in the context of verification? I mean, that's what verification is for. Respectfully, Your Honor, Commerce does not use verification to figure out books and records for the first time. Parties provide books and records... I'm not saying that. I'm talking about reconciliation. Yes, but, Your Honor, they never actually provided the reconciliations to begin with, Your Honor, and this would be something like the spreadsheet that... The details adjustment spreadsheet that opposing counsel was asking the court to look at. Some of those direct material spreadsheets, Commerce actually did determine that that was the kind of information that it was asking for, the direct material shifting, and it says, you know, project number 123, project number ABC, and they were shifted from, you know, project one to project two. That is the kind of reconciliation information that Commerce would typically receive ahead of time and then verify when it gets to... They never actually received the reconciliations. Well, could not have Commerce, at verification requested and sought, sat down with them and say, okay, now give me a project-by-project breakdown. You've given me... We received your aggregated data here. This is verification. I want you now to break it down project-by-project. That's not the purpose of verification from Commerce's perspective, and we believe that's consistent with the statute and regulations, specifically 1677NE3 says that Commerce is not required to consider information that is so incomplete that it cannot serve as the basis for reaching the applicable determination. And again, the books that were provided here were these costs of production that by Hyundai's own admission, and this is, again, not a finding of intent, but just uncontested facts on the record, the reported cost of production did not necessarily tie to the actual cost of production of these projects, and so because Commerce had to totally disregard the records that it would normally rely on, it asked these series of questions, asking Hyundai to provide on a project-by-project basis showing where the costs started, where the costs were transferred from, and marry all of that up for Commerce so that it could see that reconciliation. Had it provided that full reconciliation, then Commerce could have conducted potentially verification to say, okay, thank you. We received the verification. We received the cost reconciliation. We'd like to see these three randomly sampled projects, and we'd like to see, you know, the documentation showing that that shift occurred. That's the way that it would have occurred in this instance, and I see that my time is exhausted, and so unless there are any other questions from the court, we would ask that the court affirm Commerce's determination to apply to an AFA here. Anything else for Ms. Kristeniak? Otherwise, Ms. Brewer, you have a couple of minutes. Any new points you wish to raise? Thank you, Your Honor. Yes, may it please the court. The confidential record in this case undermines the arguments that Hyundai makes publicly both in its brief and in particular its reply brief as well as here today. Commerce issued a confidential cost memorandum as part of the final results that details the numerous reasons why Hyundai's arguments, particularly with respect to its reporting of itemized differences between the costs that it shifted, fail, and why the reported costs are unreconciled and unreliable. And it also demonstrates why there is such a disparity in the reported costs that verification was not possible. And most notably, Hyundai's briefs both before this court and the trial court largely ignored the specific findings that Commerce made in the confidential cost memorandum, which is the chief document that reflects the confidential information on the record that Commerce relied upon. And without discussing the actual confidential information in that memorandum, I'd like to just direct the court to two sections of that memo that Hyundai fails to address and that undermine its arguments. First, Hyundai claimed in its reply brief at pages 22 to 27 that with respect to silicon steel costs and other categories for which costs were shifted that it provided processing reports and engineering documents to support its reported silicon steel costs. Yet, if you look at the pages of the joint appendix 28290 through 28292, there's an extensive discussion about this reporting. Commerce addresses these precise claims confidentially and explains why in detail Hyundai's reported silicon steel costs could not be reconciled or traced to the alleged supporting documentation that it provided. And to respond to Hyundai's point regarding verification, if you look at that confidential discussion, it's quite clear, and Commerce discusses specifically why the reporting was so problematic that it could not conduct a verification and that verification was not an appropriate way to reconcile those disparate costs. Again, Hyundai does not address these detailed confidential findings. Second, for the other four categories for which Hyundai admitted shifting costs, which are included in the document at appendix page 27369 that we've been discussing, again, in the confidential memorandum, Commerce addresses each of those categories one by one and explains why Hyundai's reported costs do not add up. Again, Hyundai sort of glosses over these arguments in its public brief, but it failed to address the confidential data and the confidential numbers that Commerce relied upon, which are very compelling. And again, even if you look at the public version of Hyundai's reported costs for these categories, joint appendix page 27369, it shows that Hyundai simply reported a recalculated or add-back cost for these categories without any detailed demonstration of how those adjustments were calculated to reverse the initial shifting of costs with the exception of the single page that follows that counsel for Hyundai pointed out. I appreciate the court's time today. I'm happy to answer any questions from the panel. Are there any questions for Ms. Brewer? All right, thank you. Mr. Kendler, you have rebuttal time. Thank you, Your Honor. Two quick points on rebuttal. First, the government has still failed to point to any evidence of inaccuracy or error in Hyundai's costs that would make them unverifiable. Its finding of unverifiability is based on the determination that Hyundai's costs were manipulated, a term that it used over 20 times in its determination, as many times in its brief before this court, and about half a dozen times I heard during the argument today. But the fact that Hyundai shifts costs between projects, which it has recognized to Commerce time and again, is not at issue. And the nefarious undertones alleged by the government are not warranted. Hyundai's practice has been the same since the original investigation. The Commerce Department has repeatedly verified it. They've done so using the costs and documents provided by Hyundai over the course of those reviews at verification. There was more information on the record in this review than there was in the second administrative review or the original investigation. Counselor, weren't Commerce's requests for data more specific and requesting more detail than in prior reviews? Yes, and we continue to maintain that Hyundai provided the requested detail to the degree that the department requested it. If, for example, as Ms. Brewer suggests, the government had made requests for other or more detailed information. Look at attachment 2SD-1. It's at appendix 27367. Certainly. Okay. One moment to just bring it up. Okay. This is in response to Commerce's request for more specific data. Yes, Your Honor. And wouldn't you agree that that attachment provides a specific cost shifting for single projects or a single project? Yes, I would, Your Honor. There are project numbers on the left, quantities of LPPs, and so forth. And Commerce wanted and sought a project-by-project breakdown. Yes, and this is project-by-project. You're saying that the data that I'm looking at on this attachment is a project-by-project breakdown of the specific cost or cost shifting between the projects? Yes. May I proceed, Your Honor? Yes, please proceed. Thank you, Judge Newman. You see on the left there, there's project number. So that is line-by-line, project-by-project. And then this is to be read in conjunction with the subsequent worksheets at 27,368, 369, and 370. And then thereafter, we have a bill of material that was provided voluntarily by Hyundai, and that's what the government continues to refer to as a sample. That's a mischaracterization. The government never requested this bill of material. Hyundai provided it voluntarily to expand upon the itemizations, the project-specific itemizations that were on the record. And indeed, there were bills of material already on the record covering 18 total large power transformers. And that's where the kind of fundamental problem with the government's argument is here and with the Commerce Department's determination is that there was more information on the record than in the previous two segments of the proceeding where the department successfully verified Hyundai's costs. It simply doesn't make sense that now, armed with more information than ever before, the department could suddenly wake up. The same department officials could suddenly wake up and say it was unverifiable. And indeed, that goes to Ms. Brewer's point, for example, where she discussed the silicon steel processing report. The verification reports from the prior two verifications at Appendix 24,932 and 24,979, albeit that latter one is partially redacted, but they specifically show how, at verification, the Commerce Department used the very same silicon steel processing report that the confidential cost memorandum in this review suddenly and supposedly exposes all the problems for. That's the problem here. And this goes to my second point that I wanted to make on rebuttal. Commerce verified Hyundai's costs twice before using additional corroborative information collected at verification. Corroborative is the key point because the Commerce Department has a practice upheld by the courts that where new information is presented at verification, the Commerce Department will accept it where it corroborates, clarifies, or supports information already on the record. That's what Commerce did at the prior verifications, and it's what it could have done here as well. All that's true, but that's not your problem. Your problem is that you haven't got to verification. And it could be that Commerce did wake up. After doing reviews for a period of years, maybe they did wake up and say, hey, we need to look at this more closely and let's seek more detailed cost information, and that's what they did. Indeed it is. And if that's the case, if it is, as you say, that Commerce woke up, if that's the case, then you should have woken up also and said, wait a minute, this case is being treated differently than prior reviews. They're asking for more data. They're asking for different data, more specific data. Something's afoot. Yes. But you didn't do that, it seems like. Well, I would respectfully disagree, Your Honor. I would say we were awake and alert. We provided all the information requested, and the key point here is the verifiability, right? Because Commerce, after we gave them everything that they requested, Commerce didn't say we've looked at this and we've determined for reasons one, two, and three that it is unverifiable. They canceled the verification. They refused to come to the verification that they'd done twice before with less information and successfully verified it, and then suddenly said it was unverifiable. That's where the inconsistency is. They had more information than ever before. We, again, we contest the view that we did not give them what was asked for. We gave them what was asked for and then some, and they looked at all of it, the same people who had verified it twice before, the same people looked at it and said now all of a sudden it's unverifiable. And under the statute, the Court of International Trade has held that you cannot make that finding. A refusal to conduct verification is, quote, not the equivalent of a valid finding that such information cannot be verified under the statute. That's exactly what Commerce did here. It refused to verify or engage with the submitted evidence. It made a conclusory declaration of unverifiability, and to be clear, the dictionary definition of unverifiable means incapable of being verified, incapable of demonstrating the accuracy or truth of something. We know, we know from the original investigation and from POR2 that that is not true. We know that this information is verifiable, and that is exactly why this decision cannot stand. Unless there are any further questions, thank you, Your Honors. Any more questions for Mr. Kendler? Hearing none, with thanks to all counsel, the case is taken under submission.